1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

EARL LOUK,                              )      NO. CV 13-9305 AGR
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )      MEMORANDUM OPINION AND
CAROLYN W. COLVIN,                      )      ORDER
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
                                        )
_____ )

18
19
20
21
22
23

      Plaintiff Earl Louk filed this action on January 7, 2014.  Pursuant to 28

U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.

(Dkt. Nos. 9, 10.)  On October 28, 2014, the parties filed a Joint Stipulation ("JS")

that addressed the disputed issues.  The court has taken the matter under

submission without oral argument.

24
25
26

      Having reviewed the entire file, the court reverses the decision of the

Commissioner and remands this matter for proceedings consistent with this

opinion.

27
28

# I.

## PROCEDURAL BACKGROUND

On May 11, 2009, Louk filed an application for supplemental security income, alleging an onset date of May 1, 2002.  Administrative Record ("AR") 25, 123-29.  The application was denied initially and on reconsideration.  AR 25, 68-69.  Louk requested a hearing before an Administrative Law Judge ("ALJ").  AR 86.  On May 1, 2012, the ALJ conducted a hearing at which Louk and a vocational expert testified.  AR 42-67.  On June 11, 2012, the ALJ issued a decision denying benefits.  AR 25-31.  On October 18, 2013, the Appeals Council denied the request for review.  AR 1-6.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### DISCUSSION

#### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B.    The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Louk had not engaged in substantial gainful activity since May 11, 2009, the application date.  AR 27.  Louk has the severe impairments of bipolar disorder, with attention deficit hyperactivity disorder, with history of methamphetamine abuse.  *Id.*  He has the residual functional capacity to perform a full range of work at all exertional levels, but is limited to simple repetitive tasks that do not involve frequent contact with the public.  AR 29.  Louk is capable of performing past relevant work as a shop laborer and detailer.  AR 31.

#### C.    Past Relevant Work

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'"  *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted).  Past relevant work is work that

---

[1]   The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsbury*, 468 F.3d at 1114.

1   the claimant has done within the past 15 years, that was substantial gainful

2   activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. §

3   404.1560(b)(1).

4          "Although the burden of proof lies with the claimant at step four, the ALJ

5   still has a duty to make the requisite factual findings to support his conclusion."

6   *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ must make

7   "specific findings as to the claimant's residual functional capacity, the physical

8   and mental demands of the past relevant work, and the relation of the residual

9   functional capacity to the past work."  *Id.* at 845; Social Security Ruling 82-62;[2]

10  *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e).

11         The ALJ's findings as to past relevant work are unclear.  In finding that

12  Louk had not engaged in substantial gainful activity since May 11, 2009 (the

13  application date), the ALJ stated:

14            The claimant worked at a number of jobs in 2008 and 2009,

15            usually for two to three months at a time.  When he did work,

16            he worked at the SGA level.  There were other more

17            temporary jobs that he performed in that time period as well.

18            These jobs were performed at less than SGA level.

19  AR 27.  The ALJ later found that Louk was capable of performing past relevant

20  work as a shop laborer and detailer.  AR 31.

21         Louk argues that those "work attempts" do not qualify as past relevant work

22  because he did not make enough money to constitute obvious substantial gainful

23  activity.  "Substantial gainful activity is work done for pay or profit that involves

24  significant mental or physical activities."  *Lewis v. Apfel*, 236 F.3d 503, 515 (9th

25

26         [2]  Social Security rulings do not have the force of law.  Nevertheless, they
27  "constitute Social Security Administration interpretations of the statute it
    administers and of its own regulations," and are given deference "unless they are
28  plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
    F.2d 1453, 1457 (9th Cir. 1989).

4

1    Cir. 2001); 20 C.F.R. §§ 404.1574, 416.974.

2        The ALJ relied on the vocational expert's testimony that Louk had past

3    relevant work as a shop laborer and detailer.  AR 31, 63-64.  The vocational

4    expert's testimony appears to be based on Louk's Disability Report – Adult and

5    Work History Report, which indicates he worked (a) as a shop laborer in January

6    2009, working eight hours per day for four days a week at $8.50 per hour, and (b)

7    as a lot attendant detailer from December 2005 to February 2006, working eight

8    hours per day for six days a week at $8.50 per hour.  AR 145, 155.  The

9    Commissioner argues that Louk therefore earned $408 per week as a lot

10   attendant detailer in 2005-06 and $272 per week as a shop laborer in January

11   2009, which was above the threshold for substantial gainful activity in 2005, 2006

12   and 2009.  Work performed constitutes substantial gainful activity if the plaintiff

13   earned more than $830 per month on average in 2005, $860 per month in 2006

14   and $980 per month in 2009.  *See* Monthly Substantial Gainful Activity Amounts

15   Chart, *available at* http://www.ssa.gov/OACT/COLA/sga.html.

16       On the other hand, the Summary Earnings Query, dated August 25, 2011,

17   shows $0.00 earnings in 2005 and 2006.  AR 130.  The Summary Earnings

18   Query shows $4,898.18 in 2009, but the Detailed Earnings Query shows only

19   $148.00 in earnings from the shop laborer job.  AR 137.  The earnings queries

20   indicate that Louk's wage totals for the lot attendant detailer and shop laborer

21   were well under the amount necessary to support a presumption of substantial

22   gainful activity pursuant to 20 C.F.R. § 416.974.

23       This matter will be remanded so that the ALJ can clarify the findings as to

24   whether the jobs as shop laborer and lot attendant detailer constituted substantial

25   gainful activity.  Although the Commissioner argues that the error is harmless

26   because Louk would be found not disabled at step five of the sequential analysis,

27   the ALJ should make that determination in the first instance.

28

5

**D.    Examining Physician's Opinion**

Louk contends that the ALJ did not properly consider the opinion of Dr. Ngati, an examining physician.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'"  *Carmickle*, 533 F.3d at 1164 (citation omitted).

Dr. Ngati provided a comprehensive psychiatric evaluation on November 14, 2009.  AR 259-63.  Dr. Ngati diagnosed Louk with mood disorder not otherwise specified, most likely bipolar-II; polysubstance abuse; history of bereavement; and history of ADHD, with a Global Assessment of Functioning ("GAF") of 55.[3]  AR 28, 262.  Dr. Ngati noted that Louk was receiving psychiatric medications, and he appeared to be "fairly stable."  AR 28, 263.  Dr. Ngati opined that Louk had the ability to perform simple and repetitive tasks, as well as detailed and complex tasks; accept instructions from supervisors and interact with coworkers and the public; perform work activities on a consistent basis without special or additional instructions; and maintain regular attendance in the workplace and complete a normal workweek without interruptions from a psychiatric condition.  AR 263.  However, Dr. Ngati noted that "given [Louk's] long history of antisocial traits, as well as his poor performances at work, he may need limited work hours."  AR 28, 263.

The ALJ gave the greatest weight to Louk's treating psychologist, Dr. Eby, who began treating Louk in March 2009.  AR 30, 309.  Dr. Eby noted in November 2010 that Louk had been stable for at least a year, with only mild

---

[3]  A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000).

1   symptoms of depression and no significant mood cycling.  AR 30, 305, 307.  Louk

2   had not exhibited any problems with memory or concentration, and he had good

3   perception and judgment.  AR 30, 306.  Louk was able to complete his daily

4   activities and responsibilities.  AR 307.  Socially, he sought support from his

5   girlfriend and was active in the community doing recreational activities.  AR 308.

6          The ALJ found Dr. Eby's opinion was supported by Dr. Ngati's opinion that

7   Louk was capable of maintaining regular attendance in the workplace and

8   completing a normal workweek without interruptions from a psychiatric condition.

9   AR 30, 263.  The ALJ gave "not . . . great weight" to the portion of Dr. Ngati's

10  opinion about Louk's possible need for limited work hours.  AR 30, 263.  The ALJ

11  found the observation not material to the relevant time period.  AR 30.  The ALJ

12  noted:  "Certainly when [Louk] historically was abusing drugs, he had all the

13  dysfunctional behaviors recorded in the evidentiary record.  During that past

14  period of time, [Louk]'s substance abuse would have been material to [Louk] of

15  disability.  For the period relevant here, it no longer is."  *Id.*  The ALJ noted that by

16  July 2009, Louk had full and appropriate affect with euthymic mood, and good

17  memory and concentration.  AR 27-28, 215.  Louk moved to the Salvation Army,

18  where he was back on track to recovery and generally gave up alcohol and

19  drugs.  AR 28, 55, 321.  In November 2009, Louk reported troublesome

20  nightmares, but his mood was stable and he was euthymic with broad affect.  AR

21  28, 318.  Thereafter, Louk's mood was generally stable when he took his

22  medications and refrained from drug abuse.  AR 28, 293-94, 312-13, 315-17.

23         Louk contends that his antisocial traits endured even after he stopped

24  abusing drugs and, thus, the ALJ's rejection of Dr. Ngati's opinion is not

25  supported by substantial evidence.  Louk argues that on May 27, 2011, his

26  prognosis was "poor/fair."  JS 12; AR 313.  However, the same May 2011

27  treatment note indicated that Louk had one "legitimate" blow-up, but his mood

28  was more stable on Depakote and Abilify.  AR 313.  That note also indicated that

7

1  Louk was doing volunteer work and was looking for work. *Id.* Louk argues that

2  records from November 2010, January 2011 and April 2011 indicate his

3  prognosis was "poor." JS 12; AR 314-16.  Nevertheless, the mental status

4  examinations in November 2010, January 2011, and April 2011 indicate that Louk

5  had linear, goal-directed thought process, full and appropriate affect, mood either

6  euthymic or slightly irritable, good memory and concentration, and fair impulse

7  control.  AR 28, 314-16.  It is the ALJ's province to interpret the medical evidence.

8  *See Moncada*, 60 F.3d at 523.  Based on the record as a whole, the ALJ could

9  reasonably conclude that Dr. Ngati's opinion as to limited work hours did not

10  apply from May 11, 2009 through the date of the decision.  The ALJ did not err.

## IV.

## ORDER

13  IT IS HEREBY ORDERED that the decision of the Commissioner is

14  reversed and the matter remanded for further proceedings consistent with this

15  opinion.

16  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

17  the Judgment herein on all parties or their counsel.

20  DATED: December 30, 2014

*alicia G. Rosenberg*

ALICIA G. ROSENBERG
United States Magistrate Judge

8